TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
JAMES E. DOCHTERMAN (Cal. Bar No. 256396)
Assistant United States Attorney
Asset Forfeiture Section
      Federal Courthouse, 14th Floor
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-2686
      Facsimile: (213) 894-0142
      E-mail: James.Dochterman@usdoj.gov

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:21-CV-04404 |
|     Plaintiff, | VERIFIED COMPLAINT FOR FORFEITURE |
|     v. | 18 U.S.C. §§ 981 (a)(1)(A) and (C), and 984 |
| $241,634.03 IN FUNDS FROM CITY NATIONAL BANK ACCOUNT ENDING IN X2325; | [IRS-CI] |
| $769.66 IN FUNDS FROM CITY NATIONAL BANK ACCOUNT ENDING IN X2694; | |
| $52,000.00 IN FUNDS FROM MIDFIRST BANK ACCOUNT ENDING IN X5941; AND | |

1

$1,500.00 IN FUNDS FROM MIDFIRST
BANK ACCOUNT ENDING IN X5071,

    Defendants.

Plaintiff United States of America brings this claim against the defendant bank funds described more specifically below, and alleges as follows:

## JURISDICTION AND VENUE

1.    The government brings this in rem forfeiture action pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) and 984 on the grounds that the defendant funds represent proceeds of or were involved in one or more violations of 18 U.S.C. §§ 1343 (Wire Fraud), 1349 (Conspiracy to Commit Wire and Bank Fraud), and 1956(a) and (h) (Money Laundering and Conspiracy to Commit Money Laundering).

2.    This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3.    Venue lies in this district pursuant to 28 U.S.C. § 1395.

## PERSONS AND ENTITIES

4.    The plaintiff in this action is the United States of America.

5.    The defendants in this action are $241,634.03 in funds seized from the City National Bank account ending in x2325, held in the name of the E/H Group – Worldwide, Inc, aka "EMCO/Hanover," a Florida corporation ("E/H Group") ("E/H Group-CNB x2325"); $769.66 in funds seized from the City National Bank account ending in x2694, held in the name of Bruce Willard Barren ("Barren") ("Barren-CNB x2694"); $52,000.00 in funds seized from the MidFirst Bank[1] account ending in x5941,

_____

[1] In 2016, 1st Century Bank merged into MidFirst Bank.  While the business of 1st Century Bank continues to operate under the 1st Century brand as a division of MidFirst Bank, the seized accounts associated with 1st Century will be referred to as accounts from MidFirst Bank as indicated on the seizure warrant.

held in the name of E/H Group ("E/H Group-MFB x5941"); and $1,500.00 in funds seized from the MidFirst Bank account ending in x5071, held in the name of Barren ("Barren-MFB x5071") (collectively, the "defendant funds") seized on July 2 and 14, 2020, pursuant to federal seizure warrants. Barren asserts that he is the president of E/H Group. Although incorporated in Florida, E/H Group operates from Los Angeles, California and holds bank accounts under a Los Angeles, California address. Plaintiff is informed and believes that it is not registered with the State of California as a foreign corporation.

6. The defendant funds are in the custody of the Internal Revenue Service-Criminal Investigation ("IRS-CI"), where they shall remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of the E/H Group, Barren, may be adversely affected by these proceedings. The government is not seeking to forfeit any interest of City National Bank, MidFirst Bank, the State of Arizona, the State of Maine, the Commonwealth of Massachusetts, the State of Ohio, the State of Washington, or the State of West Virginia.

## BACKGROUND

8. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") is a federal law enacted around March 2020. The CARES Act was enacted to provide emergency financial assistance to millions of Americans who suffered economic effects caused by the COVID-19 pandemic. Among the forms of relief provided by the CARES Act was the allocation of substantial federal funding for forgivable loans to be provided to small businesses for job retention and certain other expenses, and enhancement of state unemployment insurance benefits for individuals.

**Economic Injury Disaster Loan Program**

9. The CARES Act expanded the SBA's long-standing Economic Injury Disaster Loan Program ("EIDL program") which has traditionally provided assistance to businesses located in regions affected by declared disasters. Under the CARES Act

expansion, the EIDL program allowed small businesses, nonprofit organizations, and certain U.S. agricultural businesses that suffered substantial economic injury as a result of the COVID-19 pandemic to apply for funding under the COVID-19 EIDL program, which provided working capital loans of up to $150,000, amortized for up to a 30-year term at a low interest rate, with payments deferred for one year.  The amount of each particular loan was determined in part on information provided by the applicant about the business' employees, revenue and cost of goods.  Approval of a COVID-19 EIDL program loan was based on a credit score that was calculated without the usual requirement of a first-year tax return or proof that the business was incapable of obtaining credit elsewhere.  A business that applied for a COVID-19 EIDL program loan could also apply for up to a $10,000 advance that would be funded within days of approval in the form of a grant that did not have to be repaid regardless whether the loan was approved.

10.     Each business that applied for a COVID-19 EIDL program loan was required to make certain affirmative certifications regarding eligibility, under penalty of perjury.  The application process included an explicit warning that the SBA would rely on the applicant's self-certification of eligibility in awarding any requested advance. COVID-19 EIDL applications were submitted directly to and processed by the Small Business Administration ("SBA") with support from a government contractor.  Once a loan was approved, the SBA would deposit COVID-19 EIDL funds directly to the business bank account that the applicant identified in the EIDL application.  Following SBA EIDL funding approval, a loan applicant could alter the original bank routing and account information provided in its original application, causing approved EIDL funds to be re-routed to a different account recipient.

**CARES Act Unemployment Benefit Program**

11.     In addition to the EIDL Program described immediately above, the CARES Act amended certain provisions of the Emergency Unemployment Insurance

Stabilization and Access Act (EUISAA). The amendments provided emergency administrative grants to states for unemployment benefits and temporarily modified state unemployment compensation laws to allow states to use included provisions that authorized federal funding of state unemployment benefits to compensate workers who were not ordinarily eligible for unemployment benefits.

12.     While the provisions of the CARES Act and the EUISAA maintained the fundamental eligibility requirements of the Federal-State unemployment insurance program, each state was responsible for ensuring that only eligible individuals received benefits and implementing strategies and tools to prevent, detect, and recover fraudulent payments. Nevertheless, fraudulent remote and imposter claims so overwhelmed the states that in August 2020, the Department of Labor published guidance to assist states in their efforts to prevent and detect unemployment insurance-related fraud and identity theft, and recover fraudulently-obtained overpayments.[2]

13.     Plaintiff alleges that the defendant funds represent a combination of fraudulently-obtained state unemployment insurance benefits paid by Arizona, Maine, Massachusetts, Ohio, Washington, and West Virginia, and fraudulently-obtained SBA EIDL funds deposited into, withdrawn from, and transferred among, the E/H Group and Barren-controlled City National Bank and MidFirst Bank accounts, including the accounts from which the defendant funds were seized.

## FACTS SUPPORTING FORFEITURE

14.     On June 26, 2020, a City National Bank ("CNB") investigator advised IRS-CI Special Agent ("SA") Remoun Karlous ("Karlous") of suspicious activity that CNB had detected involving E/H Group-CNB x2325 and Barren-CNB x2694. Specifically, the CNB investigator told SA Karlous that the State of Washington and the Commonwealth of Massachusetts had made multiple deposits of unemployment insurance benefit funds for the benefit for individuals not associated with those accounts.

_____

[2] Unemployment Insurance Program Letter No. 28-20 (Dep't of Labor Aug. 31, 2020).

The CNB investigator also advised that E/H Group-CNB x2325 received deposits of proceeds from three SBA EIDL loans, totaling approximately $350,000.  SA Karlous reviewed CNB's documentation and discovered multiple apparently fraudulent deposits to  Barren-CNB x2694 and E/H Group-CNB x2325, and subsequent movement of those funds to other accounts.

**Activity Involving Fraudulently-obtained State Unemployment Benefits and SBA EIDL Deposits**

15.     On or about April 29, 2020, the IRS deposited $8,307.00 to E/H Group-CNB x2325, described as "IRS TREAS 310 TAX REF" (indicating that the payment was a tax refund), for a beneficiary identified with the initials LI,[3] who was not an account holder of the account.

16.     The May beginning balance in E/H Group-CNB x2325 was approximately $9,497.00.  The May 2020 bank statement for E/H Group-CNB x2325 showed that the account received four (4) deposits of state unemployment benefits totaling $26,765.00, for beneficiaries who were not E/H Group.  All four (4) deposits are believed to have constituted fraudulently-obtained unemployment insurance benefit payments.

17.     On or about May 13, 2020, the State of Washington deposited: (a) $10,710.00 to E/H Group-CNB x2325, described as "WA ST EMPLOY SEC UI BENEFIT," for a beneficiary identified with the initials BT; and (b) an additional $9,920.00 to E/H Group-CNB x2325, described as "WA ST EMPLOY SEC UI BENEFIT," for a beneficiary identified with the initials MT.  Neither beneficiary was an account holder for that account.

18.     On or about May 20, 2020, the State of Maine made two (2) deposits totaling $6,135.00 to E/H Group-CNB x2325, both described as "MAINE DEPT LABOR UNEMP COMP," for a beneficiary identified with the initials KW, who was not an account holder for that account.

---

[3] Victim names appear as initials in this complaint.

19.     The April and May 2020 deposits to E/H Group-CNB x2325 by Washington, Maine, and the IRS totaled approximately $35,072.00.  On May 21, 2020, Barren deposited check #101 drawn from the Barren-CNB x2694 account for $10,000.00 into the E/H Group-CNB x2325 account.  At the end of May, the E/H Group-CNB x2325 account balance was only $410.17.

20.     The June 2020 bank statement for E/H Group-CNB x2325 account showed six (6) deposits of state unemployment insurance benefits totaling approximately $41,257.00 for beneficiaries who were not E/H Group.

21.     On or about June 8, 2020, the State of Arizona deposited $7,272.00 to E/H Group-CNB x2325, described as "BENEFITPAY," for a beneficiary identified with the initials MLS, who was not an account holder for that account.

22.     On or about June 8, 2020, the State of West Virginia (identified as "WORKFORCE WV") deposited $7,138.00 to E/H Group-CNB x2325, described as "PUABENEFIT," for a beneficiary identified with the initials NSS, who was not an account holder for that account.

23.     On or about June 11, 2020, the State of Arizona deposited $7,989.00 to E/H Group-CNB x2325, described as "BENEFITPAY," for a beneficiary identified with the initials EJR, who was not an account holder for that account.

24.     On or about June 17, 2020, the State of Arizona deposited $717.00 to E/H Group-CNB x2325, described as "BENEFITPAY," for a beneficiary identified with the initials WJC, who was not an account holder for that account.

25.     On or about June 18, 2020, the State of Ohio (identified as "ODJFS-PUA")[4] deposited $9,435.00 to E/H Group-CNB x2325, described as "FEDERAL," for a beneficiary identified with the initials TM, who was not an account holder for that account.

---

[4] Available online at https://pua.unemployment.ohio.gov/Claimant/Core/Login.ASPX.

26.     On or about June 18, 2020, the State of Arizona deposited $8,706.00 to E/H Group-CNB x2325, described as "BENEFITPAY," for a beneficiary identified as "Bruce W. Barren." Barren, who is not a resident of Arizona, benefited personally from this fraudulent unemployment insurance deposit made in his name, pursuant to the fraud scheme described herein. In total, the four above-described fraudulently-obtained Arizona unemployment benefit deposits totaled $24,684.00.

27.     The June 2020 bank statement for E/H Group-CNB x2325 account showed three (3) deposits of SBA EIDL funds totaling approximately $342,500.00 for beneficiaries who were not E/H Group.

28.     On or about June 18, 2020, the SBA deposited $149,900.00 in EIDL funds to E/H Group-CNB x2325 for the beneficiary "Terra Gold Farms, Inc," which was not an account holder for that account.

29.     On or about June 19, 2020, the SBA deposited $42,700.00 in EIDL funds to E/H Group-CNB x2325 for the beneficiary "Clemmons Potatoe Farms," which was not an account holder for that account.

30.     On or about June 24, 2020, the SBA deposited $149,900.00 in EIDL funs to E/H Group-CNB x2325 for the beneficiary "Eye Specialist Group," which was not an account holder for that account.

31.     The June 2020 ending balance in E/H Group-CNB x2325 was approximately $152,664.03. Between June 8, 2020, and June 23, 2020, the E/H Group withdrew approximately $237,106.00 through the payment of the following nine (9) checks in excess of $2,000 and three (3) wire transfers in the following amounts, to unknown payees:

    a.     On June 8, 2020, Check No. 192 for $2,050.00;

    b.     On June 9, 2020, Check No. 193 for $5,000.00;

    c.     On June 10, 2020, Check No. 194 for $5,769.60;

    d.     On June 12, 2020, Check No. 196 for $5,000.00;

e.      On June 12, 2020, Check No. 198 for $5,812.60;

f.      On June 16, 2020, Check No. 199 for $5,769.60;

g.      On June 19, 2020, Check No. 204 for $6,964.80;

h.      On June 19, 2020, Check No. 205 for $8,700.00;

i.      On June 22, 2020, Check No. 208 for $33,840.00;

j.      On June 19, 2020, Domestic Wire for $89,000.00;

k.      On June 22, 2020, Domestic Wire for $9,200.00; and

l.      On June 23, 2020, Domestic Wire for $60,000.00.

This pattern of large outbound transfers closely following the receipt of EIDL funds is indicative of the redistribution of fraudulently-obtained funds to others for the purpose of disguising the nature, scope, ownership, location and control of the proceeds of the underlying fraud.

32.    On June 26, 2020, City National Bank froze E/H Group-CNB x2325 and Barren-CNB x2694. That same day, SBA attempted to deposit $45,600.00 in EIDL funds to E/H Group-CNB x2325 for the beneficiary "Brad S. Patt Farms," but City National Bank blocked the deposit as a result of the freeze. The application for the blocked SBA EIDL loan application was purportedly submitted by and for the benefit of an individual with the initials BP. However, BP advised SA Karlous that he was a medical doctor residing in Texas, and he neither submitted an application for the loan nor authorized the submission of an EIDL loan application in his name. BP further advised that that he did not authorize any funds payable to him to be deposited into an account at City National Bank. BP stated that he did not know Bruce Barren, had never heard of the E/H Group-Worldwide Inc., and did not authorize either party to receive any funds from the SBA on his behalf. The SBA EIDL deposit beneficiary "Brad S. Patt Farms" was not an account holder for the account into which the funds were to be deposited.

33.     On July 2, 2020, SA Karlous interviewed Barren in Los Angeles, California, regarding the fraudulent activity involving E/H Group-CNB x2325 and Barren-CNB x2694 (opened by Barren and held by E/H Group and Barren, respectively). Barren denied that the SBA EIDL funds and state unemployment funds deposited into E/H Group-CNB x2325 and Barren-CNB x2694 were related to fraudulent activity. Barren admitted, however, that he had worked on some SBA business loan applications brokered by a Florida man who Barren identified as Irwin Hyman ("Hyman").  Barren further admitted that Hyman paid Barren twenty percent (20%) of distributed loans in exchange for Barren helping Hyman secure the SBA loans on behalf of other alleged SBA loan applicants.  Barren claimed that Hyman maintained an office in Florida, but Barren could not provide a street address for Hyman and claimed that he never sent or received physical mail or packages to/from Hyman from any known physical address. Instead, Barren claimed that he communicated with Hyman by email at irwinhyman011@gmail.com, or by an unknown telephone number.

34.     Following the interview with Barren, SA Karlous served a subpoena on Google for subscriber information related to irwinhyman011@gmail.com and learned that the email was created using a computer with an internet protocol (or "IP") address of "197.242.114.123."  SA Karlous traced the IP address to the internet service provider "Spectranet," located in Lagos, Nigeria.  Google also advised that the recovery SMS telephone number on the irwinhyman011@gmail.com email account was +234-8038435662, which also traced to Nigeria.  Based on his training and experience, SA Karlous knew that fraudsters use Google's services to create temporary email addresses from which they operate fraud schemes in the United States, managed remotely from Nigeria.  Hyman is believed to be a fictitious identity created to promote the fraudulent SBA loan and state unemployment benefit scheme with the active cooperation of Barren and E/H group.

35.     During the July 2, 2020 interview, SA Karlous showed Barren a printed list of E/H Group-CNB x2325 deposits believed to be proceeds of fraudulent activity. Barren admitted that each of the following entries represented a deposit to E/H Group-CNB x2325 pursuant to Barren's arrangement with Hyman to obtain and redistribute SBA loan and state unemployment benefit funds:

| # | Transaction Date | Transaction Type | Beneficiary | Amount | Source/Payor |
|---|---|---|---|---|---|
| 1. | 4/29/2020 | TAX REF | "LI" | $8,307.00 | IRS TREAS 310 |
| 2. | 5/13/2020 | UI BENEFIT | "BT" | $10,710.00 | WA ST EMPLOY SEC |
| 3. | 5/13/2020 | UI BENEFIT | "MT" | $9,920.00 | WA ST EM PLOY SEC |
| 4. | 5/20/2020 | UNEMP COMP | "KW" | $1,935.00 | Maine Dept Labor |
| 5. | 5/20/2020 | UNEMP COMP | "KW" | $4,200.00 | Maine Dept Labor |
| 6. | 6/8/2020 | PUABENEFIT | "NS" | $7,138.00 | WORKFORCE WV |
| 7. | 6/8/2020 | BENEFITPAY | "MS" | $7,272.00 | STATE OF ARIZONA |
| 8. | 6/11/2020 | BENEFITPAY | "ER" | $7,989.00 | STATE OF ARIZONA |
| 9. | 6/17/2020 | BENEFITPAY | "WC" | $717.00 | STATE OF ARIZONA |
| 10. | 6/18/2020 | FEDERAL | "TM" | $9,435.00 | ODJFS-PUA |
| 11. | 6/19/2020 | MISC PAY | CLEMMONS POTATOE FARMS | $42,700.00 | SBAD TREAS 310 |
| 12. | 6/26/2020 | MISC PAY | BRAD S. PATT | $45,600.00 | SBAD TREAS 310 |

| | | | FARMS | | |
|---|---|---|---|---|---|

36.     Despite being identical in nature to the deposits he admitted he had worked on with "Hyman," and despite having been identified as the direct beneficiary for unemployment benefits received from Arizona (a state where he is not a resident), Barren marked each of the following wire transfers into the account with a question mark "?," suggesting that he was unable or unwilling to provide information about the transfers:

| # | Transaction Date | Transaction Type | Beneficiary | Amount | Source/Payor |
|---|---|---|---|---|---|
| 1. | 6/18/2020 | MISC PAY | Terra Gold Farms, Inc | $149,900.00 | SBAD TREAS 310 |
| 2. | 6/18/2020 | BENEFITPAY | BRUCE W BARREN | $8,706.00 | STATE OF ARIZONA |
| 3. | 6/24/2020 | MISC PAY | Eye Specialist Group L | $149,900.00 | SBAD TREAS 310 |

**Fraudulent State Unemployment Benefits and SBA EIDL Deposits Made to Barren-City National Bank Account x2694**

37.     The May 2020 bank statement for the Barren-CNB x2694 account showed eleven (11) deposits of state unemployment insurance benefits totaling approximately $23,140.00, for beneficiaries who were not the account holder.

38.     On or about May 13, 2020, the State of Washington deposited $10,710.00. to Barren-CNB x2694, described as "WA ST EMPLOY SEC UI BENEFIT," for a beneficiary identified with the initials VH, who was not an account holder for that account.

39.     On or about May 22, 2020, The Commonwealth of Massachusetts (identified as "MA DUA") made ten (10) deposits totaling $12,430.00 to Barren-CNB

x2694.  All ten deposits, which were in amounts of $823.00 or $1,423.00, were described as "MA DUA CARES ACT," for a beneficiary identified with the initials RMA, who was not an account holder for that account.

40.     The May 2020 bank statement for Barren-CNB x2694 showed a beginning May balance of $19.81.  In May 2020, Washington and Massachusetts unemployment deposits added approximately $23,140.00 to the account.  In May 2020 Barren withdrew approximately $22,030.15 from Barren-CNB x2694, leaving a month-end balance of $1,129.66.

41.     On or about June 18, 2020, the State of Ohio (identified as "ODJFS-PUA") deposited $7,890.00 to Barren-CNB x2694, described as "FEDERAL," for a beneficiary identified with the initials SM, who was not an account holder for that account.  This deposit of fraudulently-obtained state unemployment insurance funds to Barren-CNB x2694 occurred on the same day as another Ohio unemployment deposit made to E/H Group-CNB x2325 (discussed above), suggesting a relationship between the two accounts in furtherance of the Barren and E/H Group fraud scheme.

42.     During the July 2, 2020 interview, SA Karlous showed Barren a printed list of Barren-CNB x2694 deposits believed to be proceeds of the fraudulent activity described above.  Barren admitted that each of the following entries represented deposits to Barren-CNB x2694 pursuant to Barren's arrangement with Hyman to obtain and redistribute SBA loan and state unemployment benefit funds:

| # | Transaction Date | Transaction Type | Beneficiary | Amount | Source/Payor |
|---|---|---|---|---|---|
| 1. | 5/13/2020 | UIBENEFIT | "VH" | $10,710.00 | WA ST EMPLOY SEC |
| 2. | 5/22/2020 | CARES ACT | "RA" | $1,423.00 | MA DUA |
| 3. | 5/22/2020 | CARES ACT | "RA" | $1,423.00 | MA DUA |
| 4. | 5/22/2020 | CARES ACT | "RA" | $823.00 | MA DUA |

| 5.  | 5/22/2020 | CARES ACT | "RA" | $1,423.00 | MA DUA |
| 6.  | 5/22/2020 | CARES ACT | "RA" | $1,423.00 | MA DUA |
| 7.  | 5/22/2020 | CARES ACT | "RA" | $1,423.00 | MA DUA |
| 8.  | 5/22/2020 | CARES ACT | "RA" | $1,423.00 | MA DUA |
| 9   | 5/22/2020 | CARES ACT | "RA" | $823.00   | MA DUA |
| 10. | 5/22/2020 | CARES ACT | "RA" | $823.00   | MA DUA |
| 11. | 5/22/2020 | CARES ACT | "RA" | $1,423.00 | MA DUA |
| 12. | 6/15/2020 | FEDERAL   | "SM" | $7,890.00 | ODJFS-PUA |

43.     On July 2, 2020, the Honorable Gail Standish, United States Magistrate Judge, issued a seizure warrant for funds on deposit in E/H Group-CNB x2325 and Barren-CNB x2694.  The execution of the warrant resulted in the seizure of $241,634.03 from E/H Group-CNB, and $769.66 from Barren-CNB x2694.

**Fraudulent SBA EIDL Deposits Were Made to E/H Group-MidFirst Bank Account x5941 and Barren-MidFirst Bank Account x5071**

44.     During the July 2, 2020 interview, Barren admitted that he had recently opened two more bank accounts at 1st Century Bank, a subsidiary of MidFirst Bank, in Los Angeles, CA, on June 30, 2020 (E/H Group-MFB x5941 – held in the name of E/H Group; and Barren-MFB x5071 – held in the name of Barren).  Barren further admitted that he provided the MidFirst Bank account numbers to "Hyman" for the purpose of continuing their loan redistribution scheme.

45.     According to records obtained from MidFirst Bank, on or about July 8, 2020, the SBA deposited EIDL funds totaling $61,500.00 to E/H Group-MFB x5941 for a beneficiary identified as "Wietin Services," which was not an account holder for that account.  SBA records confirmed this deposit.

46.     The SBA loan application records show that Wietin Services purported to be a sole proprietorship that was 100% owned by an individual identified by the initials KW, who purported to operate the business from a residential address in O'Fallon, Missouri.  A public records search confirmed that while KW lived at the residential address in O'Fallon, Missouri listed in the application, neither the EIDL applicant's purported telephone number nor the provided email address was associated with KW. Instead, the telephone number traced to a business Voice-Over-IP ("VOIP") telephone number at "Charter Fiberlink," and the business address associated with this telephone number is actually an automobile dealership in Ballwin, Missouri.

47.     As is consistent with the Barren and E/H Group fraud scheme, there is no association between the purported beneficiary (Wieten Services) and Bruce Barren or E/H Group.

48.     On July 9, 2020, Barren executed two withdrawals from E/H Group-MFB x5941, the first being an outgoing international wire transfer for approximately $7,200.00 to an unknown recipient in Sierra Leone, West Africa; and the second being a transfer of  $1,500.00 from E/H Group-MFB x5941 to Barren- MFB x5071.  The latter transfer is consistent with Barren's prior admission that he took a 20% "fee" to fulfil his agreement with Hyman to redistribute loan deposits made to E/H Group and Barren accounts.

49.     On or about July 10, 2020, MidFirst Bank placed a temporary freeze on E/H Group-MFB x5941 and Barren- MFB x5071, blocking additional transactions.

50.     On July 14, 2020, the Honorable Steve Kim, United States Magistrate Judge, issued a federal seizure warrant for funds on deposit in E/H Group-MFB x5941 and Barren-MFB x5071, resulting in the seizure of $52,000.00 and $1,500.00, respectively.

15

## **CLAIM FOR RELIEF**

51.     Based on the above, plaintiff alleges that the defendant funds constitute or are traceable to proceeds of one or more violations of, or a conspiracy to commit one or more violations of 18 U.S.C. §§ 1343 (wire fraud) and 1349 (Conspiracy to Commit Wire and Bank Fraud), both of which are specified unlawful activities as defined in 18 U.S.C. §§ 1956(c)(7)(A) and/or 1961(1)(B).  Plaintiff further alleges that the defendant funds were involved in one or more actual or attempted violations of 18 U.S.C. § 1956(a) and (h).  The defendants are therefore subject to forfeiture pursuant to 18 USC § 981(a)(1)(A) and (C).  In addition, to the extent that the defendants are not the actual monies directly traceable to the illegal activity identified herein, plaintiff alleges that the defendants are identical property found in the same account or place as the property involved in the specified offense, rendering the defendants subject to forfeiture pursuant to 18 U.S.C. § 984.

WHEREFORE, plaintiff United States of America prays:

(a)  that due process issue to enforce the forfeiture of the defendant funds;

(b)  that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

/ / /

/ / /

/ / /

1       (c)   that this Court decree forfeiture of the defendants to the United States of

2  America for disposition according to law; and

3       (d)   for such other and further relief as this Court may deem just and proper,

4  together with the costs and disbursements of this action.

Dated: May 27, 2021          TRACY L. WILKISON
Acting United States Attorney
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section


                    */s/ James E. Dochterman*
JAMES E. DOCHTERMAN
Assistant United States Attorney
Asset Forfeiture Section

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **VERIFICATION**

I, Lauren Pulaski, hereby declare that:

1.      I am a Special Agent with the Internal Revenue Service-Criminal Investigations and the case agent for the forfeiture matter entitled <u>United States of America v. $241,634.03 in funds from City National Bank account ending in x2325, et al.</u>

2.      I have read the above Verified Complaint for Forfeiture and know its contents.  It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3.      Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed May 2 7, 2021 in Los Angeles, California.

_____
LAUREN PULASKI